## STATE OF VERMONT
## VERMONT ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **In re: Route 103 Quarry** | } | **Docket No. 205-10-05 Vtec** |
| **(Appeal of J.P. Carrara & Sons, Inc.)** | } | (Act 250 Permit No. 1R0589-8) |
| **(Cross-Appeal of Alexander, et. al.)** | } | |
| | } | |

## Decision on Pending Motions
## For Stay and to Strike

This matter remains on appeal to the Vermont Supreme Court, which has remanded the matter back to this Court[1] for the specific purpose of addressing the motion for a stay first filed by neighboring Cross-Appellants on April 2, 2007 and subsequently renewed on August 7, 2007, after the Supreme Court's remand to this Court.

In its Entry Order of July 17, 2007, the Supreme Court directed Neighbor-Appellants to re-file their stay request "within twenty-one days of the date of the entry order." Id. at ¶6. Neighbor-Appellants satisfied this directive with their filing of August 7, 2007, but subsequent filings by both parties[2] have caused delays in this Court's consideration of the stay request on remand. Neighbor-Appellants made their latest filing on September 4, 2007; the pending motions are now ripe for this Court's consideration.

Appellant-Applicant J.P. Carrara & Sons, Inc. ("Appellant-Applicant" or "Carrara") continues to be represented by James P.W. Goss, Esq., with assistance from his co-counsel, Alan P. Biederman, Esq. Neighbor-Appellants Joseph and Sue Alexander, David and Penelope Bride, Nancy and Carroll Buffum, Sr., Karlene Callahan, Sandra Shum, Judith Webster, and the Whispering Pines Tenants' Association (collectively referred to as "Neighbor-Appellants") are represented by Phoebe Mills, Esq., with assistance from her co-counsel, Stephanie Kaplan, Esq.[3] The Town of Clarendon is represented by William J. Bloomer, Esq.; the Vermont Natural

---

[1] See In re: Route 103 Quarry, 2007 VT 66, ¶¶1 and 6.

[2] Neighbor-Appellants filed a motion to disqualify the presiding trial court judge, which was ultimately denied by Chief Administrative Judge Amy Davenport on August 17, 2007. Appellant-Applicant Carrara filed a motion to strike certain portions of Neighbor-Appellants' stay filings. A memorandum in opposition to the strike motion was filed on September 4, 2007. That motion is addressed below.

[3] Stanley Alpert, Esq. served as Attorney Mills's co-counsel at trial. While Mr. Alpert has not filed a withdrawal motion with this Court, the parties' pleadings since the merits decision imply that Mr. Alpert is not actively involved in the appeal proceedings before the Supreme Court. None-the-less, the Court Manager is directed to provide Mr. Alpert with notice of this Decision, together with all attorneys who have appeared in this proceeding.

Resources Board is represented by Melanie Kehne, Esq.; and the Vermont Agency of Natural Resources is represented by Catherine Gjessing, Esq.

The Court makes the following findings and determinations on the pending motions:

## I. <u>Motion to Strike</u>

We address the last motion first, for an obvious procedural reason. Appellant-Applicant complains about the propriety of Neighbor-Appellants' accusations about alleged planned or threatened violations of the pending Amended Permit, all offered in support of Neighbor-Appellants' request for a stay. We regret this conflagration of accusations and replies of incredulity, particularly because the Court feels some responsibility for creating the foundation for this dispute, which centers around the verbiage of Condition 5 from the merits decision, repeated as Condition 11 of the Amended Permit. As expressed in the merits decision, the purpose for this additional condition was to require Carrara to provide adequate prior notice to its neighbors when its "blasting scenarios" were in excess of those that were employed in the past. [4] The motivation for imposing a new notice requirement upon Carrara was the neighbor's shortcomings in collecting and presenting sufficient reliable evidence to establish a causal link between their injuries and Carrara's blasting practices, particularly as the amount of explosives increased under the new Amended Permit. In our analysis of conformance with Act 250 Criteria 9(E),[5] we referenced the "maximum amount of explosives, per delay <u>or</u> per blast,"[6] but the Condition itself states that Carrara must provide the additional notice when it plans to "employ blasting scenarios in excess of 126 lbs of explosives per delay <u>and</u> 2,500 lbs of explosives per blast. <u>Id</u>. at 30 (emphasis added).

The limited nature of the Supreme Court's remand, especially while the substantive portion of this matter remains on appeal, does not afford this Court with the jurisdiction to interpret or clarify its prior merits decision. We **DECLINE** to grant Appellant-Applicant's motion to strike, particularly since the language we used in the merits decision affords some support for each interpretation of the additional notice condition. In doing so, we afford the appropriate weight to the allegations of threatened violations in addressing the pending motion for an interim stay.

---

[4] Merits Decision at 27 and 30.
[5] <u>Id</u>. at 27-30.
[6] <u>Id</u>. at 27 (emphasis added).

## II. **Motion for Discretionary Stay**

As directed by our Supreme Court, we must review the pending motion for stay within the context of 10 V.S.A. § 8504(f). A stay request under this section requires this Court to exercise its discretion, within the context of the established precedent. See V.R.A.P. 8(a) and Gilbert v. Gilbert, 163 Vt. 549, 560 (1995). The Gilbert Court, relying on a number of earlier precedents, summarized the elements of a successful stay request as follows: "(1) a strong likelihood of success [on appeal]; (2) irreparable injury [to the moving party] if the stay is not granted; (3) the stay will not substantially harm other parties; and (4) the stay will serve the best interests of the public." Gilbert at 560. We address these stay requirements in turn.

### *1. Likelihood of success on appeal.*

Neighbor-Appellants expend an ample portion of their legal memorandum establishing the veracity and probable success of their appeal. We have reviewed again the merits decision of November 22, 2006 in the context of Neighbor-Appellants' stay motion and Appellant-Applicant's opposition thereto, and continue to believe that the merits decision is soundly based upon the evidence presented at trial, once this evidence was afforded what this Court concluded to be the appropriate weights of credibility. None-the-less, it is not difficult to contemplate a likelihood of Neighbor-Appellants being successful in their appeal to our Supreme Court.

The Gilbert decision and cases cited therein use somewhat differing references to the degree of "likelihood" of an appeal's success.[7] We find this assessment of "likelihood" to be impossibly subjective in this particular case, and therefore conclude that the degree to which it is likely that Neighbor-Appellants will succeed on appeal does not bar the issuance of the requested stay based on this element alone.

### *2. Irreparable injury if stay is not granted.*

The past injuries suffered by all Neighbor-Appellants and their concerns about the probability of suffering similar or more severe injuries into the future are compelling and must give rise to sympathy to all those who learn of their plight. It is not difficult to conclude that many of the injuries they suffer are "irreparable,"[8] that is, "so peculiar in nature that money would not compensate for it." Bessette v. Goddard, 87 Vt. 77, 83 (1913).

---

[7] Compare Gilbert at 560 ("strong likelihood") with In re Allied Power & Light Co., 132 Vt. 554, 556 (1974)("is likely").

[8] See generally, 42 Am. Jur. 2d. Injunction § 33.

The Neighbor-Appellants' plight is made more onerous, and more egregious, by the reality that some of them occupy mobile homes in a park that is owned and managed by Appellant-Applicant. As noted in the merits decision of November 22, 2006, it is "regret[able] that the disputes between Carrara and its mobile home park tenants have become so substantial and lingered for so long that trust between the parties appears to have evaporated." Id. at 7. The deterioration of this landlord/tenant relationship may in fact be the foundation for some of the Neighbor-Appellants' irreparable injuries. However, as noted in the merits decision, we must decline to adjudicate such disputes in this appeal, as they are beyond the limits of this Court's jurisdiction.

In their stay request and the accompanying appellate brief, Neighbor-Appellants express in definitive terms the causal link between Carrara's blasting practices and their irreparable injuries. However, they chose to ignore the expert testimony and other evidence offered at trial upon which this Court based its merits decision. In essence, this Court concluded that there was not a sufficient evidentiary foundation for this Court to link Carrara's proposed future blasting practices and the harm that Neighbor-Appellants anticipated, particularly in light of the additional conditions this Court imposed upon Carrara's future blasting procedures. No new evidence has been offered that the future blasting practices will cause the irreparable injuries anticipated.

This Court must exercise sound discretion when presented with post-judgment stay requests. Gilbert at 560. To do so, we must look to whether the moving party will suffer irreparable damages "if the stay is not granted . . . ." Id. (emphasis added). Here, we are faced with a likelihood that Neighbor-Appellants will suffer some irreparable damages in the future, but we continue to conclude that the evidence presented thus far fails to show that such future injuries will be caused by the future conditional blasting that is authorized by the Amended Permit. Absent a definitive showing that Carrara's future blasting would be the cause of the Neighbor-Appellants' injuries, granting a stay would cause unnecessary losses to Carrara without affording relief to its neighbors.

The Court is troubled by the damages suffered thus far by Neighbor-Appellants and the lack of clarity in the evidence they have offered to support their conclusion that their damages were caused by the quarry blasting. It was for this reason that the Court crafted conditions under which the Neighbor-Appellants would receive sufficient notice of blasts, particularly those future blasts that exceeded the historical limits employed by Carrara and its agents. It was hoped that

this additional notice would not only warn of the upcoming blasts, but afford the quarry neighbors an opportunity to collect further evidence.

Therefore, while this Court wishes to carefully avoid adjudicating legal issues that are not yet properly before it, we conclude that an additional condition is appropriate for blasting that occurs while this matter is before the Supreme Court on appeal. The condition is as follows: to the extent that Appellant-Applicant or its agents employ blasting techniques while this appeal is pending that use either delays in excess of 126 pounds of explosives or blasts with aggregate explosive weights in excess of 2,500 pounds, Appellant-Applicant must provide the two business day prior notice to all individuals and entities that are entitled to notice under Condition 5 of the merits decision and Condition 11 of the Amended Permit.

### 3. Substantial harm if stay is granted.

Neighbor-Appellants assert that the harm Carrara will suffer, should a stay be granted, will merely be financial, and therefore will not meet the definition of "irreparable." They are correct in this assessment, but are applying the wrong standard to Carrara's supposed harm. Gilbert and the cases cited therein uniformly state that under this third element, we must determine whether "substantial" and not "irreparable" harm would be suffered if the stay is granted. Gilbert at 560.

While not "irreparable," we conclude that the losses that would be suffered by Carrara, its employees and its customers will be "substantial," if the requested stay is granted. It was definitively shown by the evidence at trial, and reinforced by the evidentiary offerings post-trial, that the Route 103 quarry delivers a unique variety of dolomite in and around Rutland County that is needed for a variety of concrete and road projects. Further, while Carrara is authorized to continue operation of the quarry under its prior permits, it has reached the depth that those permits allow. Thus, if the requested stay is granted, these ongoing quarry operations will effectively shut down for the remainder of its fall season and thereafter until the stay is lifted.

The significant losses to Carrara would be outweighed by the irreparable injuries Neighbor-Appellants have suffered in the past and may suffer in the future, if a causal link could be established. However, as noted above, we conclude that the neighbors have not presented sufficient evidence to establish such a causal link.

We would be remiss, however, to not repeat the warning to Carrara and its agents that this Court stated in its first ruling on Neighbor-Appellants' stay request: "To the extent that Appellant-Applicant J. P. Carrara & Sons, Inc. goes forward in reliance upon the Amended

Permit that is now under appeal to the Vermont Supreme Court, it does so in light of the consequent risk that could result, depending upon the outcome of the pending appeal." [9]

### 4. Will the granting or denying of the stay serve the public's best interests.

We understand that all parties here sincerely believe that they are best suited to speak in support of the public's best interests. Based upon our analysis, we conclude that the granting of the requested stay would not serve in the public's best interests. Were we to do so, Neighbor-Appellants may likely continue to suffer irreparable injuries and Applicant-Appellant would suffer substantial losses. Such an unfortunate outcome would be in degradation of several public interests, not the least of which is the fair and efficient adjudication of land use disputes. The granting of a stay here would not serve and may in fact harm the interests of the general public, both in terms of the ready supply of earth resources needed in and around Rutland County and the fair and efficient adjudication of land use disputes.

Accordingly, this Court hereby **DECLINES** to issue the stay requested by Neighbor-Appellants. Applicant-Appellant Carrara is permitted to operate the Route 103 Quarry under the terms and conditions of the Merits Decision and Amended Permit issued by this Court on November 22, 2006, subject to the additional conditions expressed in this Decision; such additional conditions shall remain in place for so long as this matter is on appeal to the Vermont Supreme Court. For the reasons stated above, the Court also **DENIES** Appellant-Applicant Carrara's motion to strike.

This concludes the proceedings before this Court. This matter remains on appeal to the Vermont Supreme Court. Any party feeling aggrieved by this Decision may appeal it to the Supreme Court pursuant to the applicable Rules governing appellate procedure.

Done at Berlin, Vermont, this 14th day of September, 2007.

_____
Thomas S. Durkin, Environmental Judge

---

[9] Route 103 Quarry, Docket No. 205-10-05 Vtec, Entry Order on initial stay request at 1 (Env. Ct. April 25, 2007).